UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:23-CV-223-CRS

BLUE SPIRITS DISTILLING, L.L.C.,
*d/b/a* Coral Cay Beverage Group                                                        PLAINTIFF

v.

LUCTOR INTERNATIONAL, L.L.C.,
*d/b/a* 375 Park Avenue Spirits, *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff, Blue Spirits Distilling, L.L.C., d/b/a Coral Cay Beverage Group ("Blue Spirits"), brings this action against defendants Luctor International, L.L.C., d/b/a 375 Park Avenue Spirits ("Luctor"), Buffalo Trace Distillery, Inc., d/b/a 375 Park Avenue Spirits ("Buffalo Trace"), Sazerac Distillers, L.L.C. ("Sazerac Distillers"), and Sazerac Company, Inc. ("Sazerac Inc.") seeking compensatory and punitive damages for alleged breaches of contract, various species of fraud, unjust enrichment, quantum meruit, conversion, and tortious interference with a prospective advantage. This matter is before the court on Defendants' Rule 12(b)(6) Motion to dismiss, DN 24, and Blue Spirits' "Alternative Motion for Leave to Amend", DN 29-2. For the reasons below, the court will grant in part and deny in part Defendants' Motion and will deny Blue Spirits' Motion.

### I. Alleged Factual Background

Blue Spirits is a distiller of alcoholic spirits and holds the exclusive distribution rights to Tommy Bahama Spirits. Amend. Compl., DN 20 at ¶¶ 12–13, PageID# 56. Near the close of 2020, Blue Spirits sought a nationwide distributor for its products. *Id.* at ¶ 16, PageID# 56. It negotiated with Sazerac Inc. but, in the end, struck a deal with Luctor, which enjoyed access to Sazerac Inc.'s global distribution network. *Id.* at ¶¶ 23–24, 43–44, PageID# 57, 60.

The two agreed that Luctor would purchase Blue Spirits' product and resell it as Blue Spirits' exclusive distributor. *Id.* at ¶¶ 45–46, PageID# 60–61; Luctor-Blue Spirits Contract, DN 20-1 at §§ 5.1.1–5.1.2, PageID# 81.[1] As part of the deal, Blue Spirits benefitted from Luctor's access to Sazerac Inc.'s distribution network. Amend. Compl., DN 20 at ¶¶ 24, 28–29, PageID# 57, 58. Additionally, Luctor was to market, sell, and promote Blue Spirits' product in a commercially reasonable way, *id.* at ¶ 62, PageID# 63; Luctor-Blue Spirits Contract, DN 20-1 at § 3.1, PageID# 80, with the caveat that Blue Spirits reimburse Luctor for same. *See* Amend. Compl., DN 20 at ¶ 65, PageID# 63; Luctor-Blue Spirits Contract, DN 20-1 at § 5.6, PageID# 82. At the time, Republic National Distributing Company, LLC ("RNDC") was one of Sazerac Inc.'s distributors. Amend. Compl., DN 20 at ¶ 33, PageID# 58. Also, RNDC marketed Sazerac Inc.'s, and thus Luctor's, products. *Id.*

While Luctor negotiated a deal with Blue Spirits, Sazerac Inc. negotiated a revised "global agreement" with RNDC. *Id.* at ¶ 31, PageID# 58. Such agreement "would transfer the majority of the marketing" from RNDC in-house to Sazerac Inc., "or its subsidiaries, and make RNDC, merely a transporter of Sazerac products." *Id.* at ¶ 32, PageID# 58. Blue Spirits was not aware of these negotiations. *Id.* at ¶ 35, PageID# 59.

Three months after entering the Luctor-Blue Spirits Contract, and at Luctor's direction, Blue Spirits delivered half-a-million-dollars' worth of product to Sazerac Distillers in Bardstown, Kentucky and submitted three invoices reflecting same. *Id.* at ¶¶ 47–50, PageID# 61. Neither Luctor nor Sazerac Distillers paid the invoices. *Id.* at ¶ 51, PageID# 61. After sixty days of non-payment, Blue Spirits demanded payment from Luctor and Sazerac Distillers. *Id.* at ¶ 52,

---

[1] The court can consider the contents of exhibits attached to a complaint when ruling on a Rule 12(b)(6) motion "without converting" it to a Rule 56 motion for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

PageID# 61. To date, they have not paid. *Id.* So, Blue Spirits notified Luctor of its intent to terminate the Luctor-Blue Spirits Contract, but Luctor denied that it was in breach. *Id.* at ¶¶ 67–68, PageID# 63. Thereafter, Blue Spirits promptly terminated the agreement notwithstanding a contractual provision that granted a breaching party 60 days to cure. *Id.* at ¶ 69, PageID# 63–64; *see* Luctor-Blue Spirits Contract, DN 20-1 at § 10.2.1, PageID# 87.

Sometime later, Blue Spirits learned that the product it delivered to Sazerac Distillers in Bardstown was sold to RNDC. Amend. Compl., DN 20 at ¶ 58, PageID# 62. Around the same time, Sazerac Inc. and RNDC's relationship soured: RNDC held all Sazerac products in quarantine at its warehouses—including Blue Spirits' product. *Id.* at ¶ 59, PageID# 62.

## II. Procedural History and Asserted Claims

Ultimately, Blue Spirits sued Luctor, Buffalo Trace, and Sazerac Distillers for breach of contract related to Luctor's non-payment. Compl., DN 1. After obtaining this court's leave, Blue Spirits filed an Amended Complaint that added an additional defendant—Sazerac Inc.—along with additional breach of contract claims for failure to perform against Defendants, and several Kentucky tort claims against Defendants. Amend. Compl., DN 20. In all, Blue Spirits advances the following claims:

1. Fraud in the inducement against Luctor and Sazerac Inc. *Id.* at ¶¶ 76–84, PageID# 65–66.

2. "Misrepresentation" against Luctor and Sazerac Inc. *Id.* at ¶¶ 85–92, PageID# 66–68.

3. Fraudulent concealment against Luctor and Sazerac Inc. *Id.* at ¶¶ 93–101, PageID# 68–70.

4. Breach of contract for failure to pay against Luctor, Buffalo Trace, and Sazerac Distillers. *Id.* at ¶¶ 102–08, PageID# 70–71.

5. Unjust enrichment against Defendants. *Id.* at ¶¶ 109–15, PageID# 71.

6. Quantum meruit against Defendants. *Id.* at ¶¶ 116–20, PageID# 72.

7. Conversion against Defendants. *Id.* at ¶¶ 121–29, PageID# 72–73.

8. Breach of contract for failure to perform against Defendants. *Id.* at ¶¶ 130–38, PageID# 73–75.

9. Tortious interference with a prospective advantage against Luctor and "Sazerac Distillers, Inc." *Id.* at ¶¶ 139–45, PageID# 75–76.

10. Punitive damages against Defendants. *Id.* at ¶¶ 146–52, PageID# 76–77.

Defendants collectively moved to dismiss Blue Spirits' Amended Complaint. Mot. to Dismiss, DN 24. Blue Spirits responded and, therein, requested leave to amend its Amended Complaint in the event the court is "inclined to grant any portion of" Defendants' Motion. Resp., DN 29-2 at PageID# 176. Defendants replied in support of their Motion and opposed Blue Spirits' Motion. Reply, DN 34. Both matters are ripe for adjudication.

### III. Legal Standard

When presented with a Rule 12(b)(6) motion to dismiss a plaintiff's complaint, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). For the court to do that, however, there must be sufficiently pleaded factual allegations. A "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (cleaned up). Neither will "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 55 U.S. at 557). Rather, the plaintiff must "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

### IV. Discussion

**A. Defendants' Motion to Dismiss**

    **1. Breach of Contract Claims: Counts IV and VIII**

Blue Spirits advances two breach of contract claims against Defendants: one for failure to pay (Count IV) and one for failure to perform (Count VIII). To "prove a breach of contract, the complainant must establish three things: 1) the existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009). Moreover, there must be privity of contract. *Sudamax Industriae e Comercio de Cigarros, LTDA v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007).

      **i.    Privity of Contract**

As a "contract is only binding upon the parties," the court begins with the issue of contractual privity. *Buttes & Ashes, Inc.*, 516 F. Supp. 2d at 845. Both breach of contract claims are premised on the obligations produced by the Luctor-Blue Spirits Contract. There are but two parties to that contract: Luctor and Blue Spirits. So, for Buffalo Trace, Sazerac Inc., or Sazerac Distillers to be on the hook for these claims, there must be privity of contract between them and Blue Spirits. There is none.

Blue Spirits contends that there is privity of contract as to all Defendants because each simply does the bidding of Sazerac Inc. as part of a "massive joint-business conglomeration." Resp., DN 29-2 at PageID# 172. Thus, so the argument goes, there is a corporate veil that ought to be pierced in the interest of justice. *Id.* at PageID# 172–74.

Generally, "separate corporate interests, including subsidiaries and affiliates . . . , are separate legal entities and must be recognized and treated as such." *Hazard Coal Corp. v.*

*Kentucky West Virginia Gas Co., LLC*, 311 F.3d 733, 739 (6th Cir. 2002). However, at times, courts are justified in piercing the corporate veil to hold bad actors accountable. There are "two dispositive elements" to corporate veil piercing: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Techs., Inc. v. Linn Station Prop., LLC*, 360 S.W.3d 152, 165 (Ky. 2012) (emphasis in original). "At the pleading stage, the plaintiff must put forth sufficient facts to state a plausible claim on both elements." *Michael W. Dickenson, Inc. v. Keeneland Ass'n, Inc.*, No. 5:15-CV-326-KKC, 2017 WL 1160575, at *3 (E.D. Ky. Mar. 28, 2017).

Blue Spirits' argument falls flat because it did not plead any factual allegations to support a corporate veil piercing claim, nor did its Amended Complaint contemplate same. Its attempt to advance such a claim in response is improper. Thus, for want of contractual privity, Counts IV and VIII against Buffalo Trace, Sazerac Distillers, and Sazerac Inc. will be dismissed.

### ii. Failure to Pay and Failure to Perform Claims

The breach of contract claims against Luctor remain to be considered. Blue Spirits' failure to pay claim (Count IV) relates to its delivery of product to Sazerac Distillers at Luctor's direction. Amend. Compl., DN 20 at ¶¶ 102–08, PageID# 70–71. The failure to perform claim (Count VIII) is premised on Luctor's alleged failure to advertise, market, and promote Blue Spirits' product in a commercially reasonable way. *Id.* at ¶¶ 130–38, PageID# 73–75. Both claims are sufficiently pleaded to survive a Rule 12(b)(6) attack.

First, it is undisputed that Blue Spirits entered a valid contract with Luctor and that the parties performed under that contract. *Id.* at ¶ 42, PageID# 60; Mot. to Dismiss, DN 24-1 at PageID# 120 (acknowledging same). The Luctor-Blue Spirits Contract provided that Blue Spirits

would deliver Tommy Bahama spirits to Luctor at whatever location it specified and issue an invoice for same, which would be paid within 60 days. Amend. Compl., DN 20 at ¶¶ 45–46, PageID# 60–61; Luctor-Blue Spirits Contract, DN 20-1 at §§ 5.1.1–5.1.2, PageID# 81. Additionally, Luctor agreed to advertise, market, and promote Blue Spirits' product in a commercially reasonable way in exchange for Blue Spirits' reimbursing Luctor for such expenses. Amend. Compl., DN 20 at ¶¶ 62, 65, PageID# 63; Luctor-Blue Spirits Contract, DN 20-1 at § 5.6, PageID# 82.

Second, Blue Spirits adequately alleged that Luctor breached the Luctor-Blue Spirits Contract by failing to pay for half-a-million-dollars' worth of product that it delivered, at Luctor's direction, to Sazerac Distillers. Amend. Compl., DN 20 at ¶¶ 47–53, PageID# 61–62. Likewise, Blue Spirits adequately alleged that Luctor breached the contract by failing to advertise, market, and promote Blue Spirits' product in a commercially reasonable way; specifically, by not preparing a marketing plan or budget as contemplated by § 5.6 of the contract. *Id.* at ¶¶ 63–66, PageID# 63.

Third, regarding damages, Blue Spirits adequately alleged that it incurred $513,360.10 in damages because of Luctor's failure to pay for its product. *Id.* at ¶¶ 106–08, PageID# 70–71. Also, Blue Spirits adequately alleged that it suffered a loss of more than $1,700,000 due to Luctor's failure to market its product in a commercially reasonable way, cumulative of (a) lost sales, (b) costs and expenses incurred in transferring inventory to Luctor and its distributors, (c) costs and expenses in locating a new distributor after termination of the Luctor-Blue Spirits Contract, (d) costs and expenses related to removing its quarantined products from RNDC, and (e) loss of reputation with bankers, venders, and potential distributors. *Id.* at ¶¶ 135, 138, PageID# 74, 75.

Nonetheless, Defendants argue that these claims are barred by Kentucky's first breach rule because, under the terms of the Luctor-Blue Spirits Contract, Blue Spirits was required to provide 60 days' notice prior to terminating the agreement. Mot. to Dismiss, DN 24-1 at PageID# 115–16. Defendants misunderstand Kentucky's first breach rule. The rule is that where a party materially breaches a contract, he is thereafter "deprived of the right to complain of a subsequent breach by the other party." *Williamson v. Ingram*, 49 S.W.2d 1005, 1006 (Ky. 1932).

Here, it is alleged (and the court therefore accepts as true) that Luctor repeatedly declined to pay for half-a-million-dollars' worth of product and, thus, materially breached the terms of the Luctor-Blue Spirits Contract. As Defendants contend that § 10.2.1 of the contract governs, they necessarily concede (at least for the sake of argument) that Luctor's alleged breach was, indeed, a material one. Mot. to Dismiss, DN 24-1 at PageID# 115; *see* Luctor-Blue Spirits Contract, DN 20-1 at § 10.2.1, PageID# 87 ("Either party may terminate this Agreement due to a *material breach* by the other party provided that such breach has not been cured within sixty (60) days of the notice of termination.") (emphasis added). Said material breach motivated Blue Spirits' subsequent termination of the agreement. So, on the face of the Amended Complaint, it is adequately alleged that the first material breach was committed by Luctor and, consequently, it would be Luctor—not Blue Spirits—who the first breach rule would prohibit from complaining of a subsequent breach. Thus, the court will not dismiss Counts IV or VIII against Luctor.

### 2. Fraud and Misrepresentation Claims: Counts I, II, and III

Next, the court will consider Blue Spirits' fraud and misrepresentation claims against Luctor and Sazerac Inc. Those are: (1) fraud in the inducement (Count I); (2) misrepresentation (Count II); and (3) fraudulent concealment (Count III). While the substantive law of fraud in the

inducement, misrepresentation,[2] and fraudulent concealment differ, all are subject to the same procedural standard: namely, that set out in Federal Rule of Civil Procedure 9(b).[3]

Because fraud claims pose "a high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, Rule 9(b) requires a party making such allegations to "state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b), namely, "the 'who, what, when, where, and how' of the alleged fraud," *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). More particularly, the rule requires the plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

Unfortunately, Blue Spirits did not plead its fraud or misrepresentation claims with the requisite particularity. It failed to identify the allegedly fraudulent statements, instead vaguely "stat[ing] that many of" Sazerac Inc.'s "representations concerning the ability to market the distilled spirits, through its distribution network were false and willfully made to Blue Spirits." Amend. Compl., DN 20 at ¶ 30, PageID# 58.

Moreover, the only specific representation identified by Blue Spirits is insufficient to support a fraud or misrepresentation claim: that Sazerac Inc. "had in place a distribution network that could fulfill the expected demand for Tommy Bahama spirits in the marketplace." *Id.* at ¶ 77, PageID# 65. Indeed, at most, it is alleged that Sazerac Inc. modified its distribution

---

[2] It is unclear whether Blue Spirits intended to advance its "misrepresentation" claim under a fraud or negligence theory. But it does not matter either way because, like "fraud, allegations of negligent misrepresentation must be pled with particularity." *Thomas v. Schneider*, 2010 WL 3447662, at *1 n.2 (Ky. App. Sept. 3, 2010) (holding parties who pleaded negligent misrepresentation to Kentucky's version of Rule 9(b)); *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247–48 (6th Cir. 2012) (acknowledging same).
[3] Although Kentucky law governs the burden of proving fraud, Rule 9(b) governs "the procedure for pleading fraud in all diversity suits in federal court." *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).

agreement with RNDC. It does not follow from that lone fact, however, that Sazerac Inc.'s distribution capabilities were crippled. Nor is it alleged in the Amended Complaint that Luctor or Sazerac Inc. represented to Blue Spirits that it maintained a relationship with RNDC in the first instance. *Compare id.* at ¶ 28, PageID# 58 (alleging that it was represented to Blue Spirits that Sazerac Inc.'s "distribution network" "could fulfill" its marketing and distribution needs), *with id.* at ¶ 33, PageID# 58 (asserting, "upon information and belief," that Sazerac Inc. used RNDC as "a distributor and marketer . . . for decades"). Thus, for lack of particularity, the court will dismiss Counts I, II, and III.

    3. **Unjust Enrichment and Quantum Meruit: Counts V and VI**

Blue Spirits advances unjust enrichment (Count V) and quantum meruit (Count VI) claims against Defendants. Amend. Compl., DN 20 at ¶¶ 109–20, PageID# 71–72. Unjust enrichment is composed of three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citing *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380–81 (W.D. Ky. 1987)). For its part, quantum meruit contains four elements: (1) "that valuable services were rendered, or materials furnished;" (2) "to the person from whom recovery is sought;" (3) "which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person;" and (4) "under such circumstances as reasonabl[e] notified the person that the plaintiff expected to be paid by that person." *Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 366 (Ky. App. 2007) (citing 66 AM. JUR. 2d *Restitution and Implied Contracts* § 38 (2001)).

Defendants argue that Blue Spirits cannot pursue either claim against Luctor because an explicit contract governs the relationship between the parties. Mot. to Dismiss, DN 24-1 at PageID# 120. Blue Spirits concedes that such claims are inappropriate where the alleged damages arise from a breach of contractual duties. Resp., DN 29-2 at PageID# 175. However, it submits that dismissal is inappropriate here because the court has yet to determine whether the Luctor-Blue Spirits Contract was valid and enforceable, and Blue Spirits has yet to elect either to affirm and enforce the Luctor-Blue Spirits Contract or rescind and invalidate it based upon fraud and misrepresentation. *Id.*

Blue Spirits' argument fails to convince. True, the court has yet to consider the validity of the Luctor-Blue Spirits Contract. But the validity of the contact is not at issue. Blue Spirits alleged that it entered a valid and enforceable contract with Luctor. Amend. Compl., DN 20 at ¶ 42, PageID# 60. Defendants acknowledge that the contract was valid and enforceable and that it governed Blue Spirits' relationship with Luctor. Mot. to Dismiss, DN 24-1 at PageID# 120. Because the validity of the contract is uncontested, Blue Spirits is "not permitted to plead . . . breach of [contract] claims and unjust enrichment" and quantum meruit claims against Luctor "in the alternative." *Mitchell v. General Motors, LLC*, No. 3:13-CV-498-CRS, 2014 WL 1319519, at *15 (W.D. Ky. Mar. 31, 2014) (dismissing unjust enrichment claims because a contract governed the parties' relationship); *Miller v. Reminger Co., L.P.A.*, No. 3:11-CV-315-CRS, 2012 WL 2050239, at *12 (W.D. Ky. June 6, 2012) (dismissing a quantum meruit claim for the same reason). Accordingly, the court will dismiss Counts V and VI as they relate to Luctor.

Further, Defendants argue these claims ought to be dismissed against Buffalo Trace, Sazerac Inc., and Sazerac Distillers. At times, a plaintiff can pursue unjust enrichment and quantum meruit claims against a non-party to a contract where the plaintiff remains

uncompensated by the contracting party and the non-party received a benefit from the plaintiff's performance under the contract. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 779–80 (Ky. 2017). Nonetheless, here, the court agrees with Defendants that the unjust enrichment and quantum meruit claims against Buffalo Trace and Sazerac Inc. (but not Sazerac Distillers) should be dismissed.

Recall that four separate entities are sued in this action. Counts V and VI, however, do not differentiate between the four defendants. As to unjust enrichment, Blue Spirits alleges the following:

> The Plaintiff Blue Spirits has conferred a benefit on the Defendants by providing valuable distilled spirits to the Defendants for which they have not been paid. The Defendants accepted the distilled spirits and have possession of them, thus receiving the benefit of said products. The Defendants have been unjustly enriched by the receipt and possession of the distilled spirits from the Plaintiff without payment.

Amend. Compl., DN 20 at ¶¶ 110–13, PageID# 71. And as to quantum meruit, Blue Spirits alleges the following:

> The Plaintiff, Blue Spirits, in good faith and pursuant to the terms of [the Luctor-Blue Spirits Contract] provided valuable distilled spirits to the Defendants as ordered by Defendants Luctor International, L.L.C., d/b/a 375 Park Avenue Spirits and its affiliates, Sazerac Distillers[,] and Buffalo Trace Distillery[.] *Some or all* of the Defendants received the distilled spirits and have possession of them, thus receiving the benefit of said products.

*Id.* at ¶¶ 117–18, PageID# 72 (emphasis added).

Such group pleading and bare recitation of elements is insufficient to state a cognizable claim for relief. *Twombly*, 550 U.S. at 546; *Iqbal*, 556 U.S. at 678. Indeed, Blue Spirits' Amended Complaint fails to allege any facts supporting its contention that Buffalo Trace received a benefit from Blue Spirits. The most that is alleged is that Buffalo Trace and Luctor

both do business as 375 Park Avenue Spirits. Amend. Compl., DN 20 at ¶¶ 8–9, 20–22, PageID# 55, 57. But that's not enough to state a cognizable claim for relief. Likewise, Blue Spirits does not allege any facts to support its contention that Sazerac Inc. was conferred a benefit by Blue Spirits. The only relevant alleged facts concern Luctor—against which these claims are improper—and Sazerac Distillers, the entity Blue Spirits allegedly delivered half-a-million-dollars of spirits to. Consequently, Counts V and VI must be dismissed as to Buffalo Trace and Sazerac Inc.

As to Sazerac Distillers, Blue Spirits alleges that it delivered product to its Bardstown facility, that it issued three invoices reflecting same, and that Sazerac Distillers declined to pay for the product. *Id.* at ¶¶ 47–53, PageID# 61–62. Also, Blue Spirits alleges this product was later sold to RNDC. *Id.* at ¶ 58, PageID# 62. In other words, Blue Spirits adequately alleged that it conferred a benefit upon Sazerac Distillers, that said benefit was appreciated, and that Sazerac Distillers retained the benefit without remitting payment. So the unjust enrichment claim survives. And Blue Spirits adequately alleged that it delivered product to Sazerac Distillers, that it accepted the delivery, and that it declined to pay for the product after receiving an invoice. So the quantum meruit claim survives. Accordingly, Counts V and VI will not be dismissed as to Sazerac Distillers.

### 4. Conversion: Count VII

Blue Spirits advances a conversion claim against Defendants (Count VII). "Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014). Blue Spirits identifies the half-a-million-dollars of Tommy Bahama spirits that it delivered to Sazerac Distillers in accord with the Luctor-Blue Spirits Contract as the converted property.

The problem is this: as a matter of law, a conversion claim cannot be brought where "the property right alleged to have been converted arises entirely from the contractual rights." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005). Said differently, "'a conversion action will not lie to enforce a mere obligation to pay.'" *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 827 (E.D. Ky. 2013) (quoting *Agnew Truck Serv. v. Ranger Nationwide, Inc.,* No. 90-CV–34 P(J), 1992 WL 437629, at *5 (W.D. Ky. Apr. 20, 1992)); *Pioneer Res. Corp. v. Nami Res. Co*., LLC, No. 6:04-CV-465-DCR, 2006 WL 1778318, at *12 (E.D. Ky. June 26, 2006) (dismissing conversion claim where the property right alleged arose "entirely from the contractual rights to compensation"). The same principle holds where, as here, a plaintiff sues a third-party to a contract for conversion. *Duracore Pty Ltd. v. Applied Concrete Tech., Inc.*, No. 5:13-CV-184-TBR, 2016 WL 3620793, at *6 (W.D. Ky. June 28, 2016). Accordingly, Count VII will be dismissed with prejudice.

**5. Tortious Interference with a Prospective Advantage: Count IX**

Blue Spirits lodged a tortious interference with a prospective advantage claim against Luctor and "Sazerac Distillers, Inc."[4] There are four elements to this claim: (1) existence of a valid business relation or expectancy; (2) defendant's knowledge of same; (3) intentional interference with same by improperly inducing or causing a breach or termination of the relation or expectancy; and (4) injury to the plaintiff by the defendant's improper or unjustified interference. *Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-CRS, 2009 WL 854362, at *9 (W.D. Ky. Mar. 30, 2009), *aff'd sub nom. Hesco Parts Corp. LLC v. Ford Motor Co*., 377 F. App'x 445 (6th Cir. 2010). A defendant's interference is improper or unjustified where he

---

[4] It seems Blue Spirits conflated the two Sazerac defendants—Sazerac Company, Inc. and Sazerac Distillers, L.L.C. Thus, it is unclear against which defendant this claim is lodged. Regardless, the claim is insufficiently pleaded for the reasons that follow.

engages in malice or some other significantly wrongful conduct, such as unlawful conduct. *Id.* at *10; *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 967 (6th Cir. 2007).

Here, Blue Spirits asserts—in conclusory fashion—that Luctor and "Sazerac Distillers, Inc." "engaged in acts of interference with the potential distributors with whom Blue Spirits sought to establish business relationships" and that they did so "without proper motive or justification." Amend. Compl., DN 20 at ¶ 142, PageID# 75. "Specifically," Blue Spirits alleges the following: Luctor and "Sazerac Distillers, Inc." "(i) communicated falsehoods and misrepresentations about the termination of the [Luctor-Blue Spirits Contract] directly to potential distributors, including but not limited to RNDC; (ii) interfere[d] with Blue Spirits' ability to obtain adequate distribution of its alcohol beverage products; and/or (iii) otherwise intentionally disrupted or jeopardized Blue Spirits's current and/or future relationships." *Id.* at ¶ 143, PageID# 75–76.

All three allegations are insufficient to support a claim for tortious interference with a prospective advantage. The first allegation fails because a misrepresentation about contractual "rights and responsibilities" is an "opinion on a matter of law which is not actionable in Kentucky." *Joseph v. Shamrock Coal Co.*, 125 F.3d 855, at *4 (6th Cir. 1997) (table). The second and third allegations fail because they are threadbare. Merely reciting the elements of tortious interference with a prospective advantage is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 546; *Iqbal*, 556 U.S. at 678. Rather, Blue Spirits was required to allege specific facts in support of its allegations. *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. App. 2005) (the plaintiff bears the burden of alleging facts from which malice or wrongful conduct can be inferred). Because it declined to do so, the court will dismiss Count IX.

### 6. Punitive Damages: Count X

Finally, Blue Spirits' Amended Complaint purports to state a standalone claim for punitive damages. Amend. Compl., DN 20 at ¶¶ 146–52. But a "claim for punitive damages is not a separate cause of action," rather, it is "a remedy potentially available for another cause of action." *Smith v. Westlake Vinyls, Inc.*, 403 F. Supp. 3d 625, 635–36 (W.D. Ky. 2019). Blue Spirits concedes as much. Resp., DN 29-2 at PageID# 176 (suggesting it committed a "harmless error"). Accordingly, to the extent Blue Spirits advanced a standalone claim for punitive damages, Count X will be dismissed with prejudice. To be clear, the court is not dismissing punitive damages as an available remedy for claims which permit their recovery.[5]

### B. Blue Spirits' "Alternative Motion for Leave to Amend"

At the close of its Response, Blue Spirits included a one-sentence "Motion" for leave to amend its Amended Complaint. Resp., DN 29-2 at PageID# 176. But it did not tender a proposed amended complaint to the court, so there is nothing for the court to review. Moreover, it is well-settled that "a request for leave to amend[,] almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (citation omitted). Accordingly, Blue Spirits' perfunctory request for leave to amend its Amended Complaint will be denied. That said, if a proper motion for leave to amend is filed, the court will consider it.

---

[5] As a result of this Memorandum Opinion & Order, only Blue Spirits' breach of contract claims against Luctor and its unjust enrichment and quantum meruit claims against Sazerac Distillers will remain. But breach of contract claims cannot support a punitive award in Kentucky: "In no case shall punitive damages be awarded for breach of contract." KY. REV. STAT. § 411.184(4). Thus, if this action proceeds to a trial, punitive damages can only be pursued against Sazerac Distillers.

## V. Conclusion

Defendants' Motion to dismiss, DN 24, is **GRANTED in part and DENIED in part** as follows:

1. The Motion is **GRANTED** as to Counts I, II, III, VII, IX, and X of the Amended Complaint for failure to state a claim upon which relief may be granted and those Counts are **DISMISSED** as to all Defendants.

    a. Counts I, II, III, and IX are dismissed **without prejudice**.

    b. Counts VII and X are dismissed **with prejudice**.

2. The Motion is **GRANTED** as to Count IV against Buffalo Trace and Sazerac Distillers for lack of contractual privity and that Count is **DISMISSED without prejudice** as to those defendants.

3. The Motion is **GRANTED** as to Counts V and VI against Luctor, Buffalo Trace, and Sazerac Inc. and those Counts are **DISMISSED without prejudice** as to those defendants.

4. The Motion is **GRANTED** as to Count VIII against Buffalo Trace, Sazerac Distillers, and Sazerac Inc. for lack of contractual privity and that Count is **DISMISSED without prejudice** as to those defendants.

5. The Motion is **DENIED** as to Counts IV and VIII against Luctor.

6. The Motion is **DENIED** as to Counts V and VI against Sazerac Distillers.

7. This results, at present, in the following procedural posture:

    a. All claims against Buffalo Trace and Sazerac Inc. are dismissed.

    b. Blue Spirits can continue to prosecute Counts IV and VIII against Luctor.

Case 3:23-cv-00223-CRS   Document 38   Filed 05/13/24   Page 18 of 18 PageID #: 227

c. Blue Spirits can continue to prosecute Counts V and VI against Sazerac Distillers.

Further, Blue Spirits' perfunctory "Alternative Motion" for leave to amend its Amended Complaint, DN 29-2, is **DENIED**.

**IT IS SO ORDERED.**

May 10, 2024

Charles R. Simpson III, Senior Judge
United States District Court