UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:23-CV-223-CRS

BLUE SPIRITS DISTILLING, LLC                                             PLAINTIFF
d/b/a CORAL CAY BEVERAGE GROUP

v.

LUCTOR INTERNATIONAL, L.L.C.                                             DEFENDANTS
d/b/a 375 PARK AVENUE SPIRITS, *et al*

# MEMORANDUM OPINION

This case is about liquor received and payment made. It's about liquor promotions and payments not made. It's about who breached the parties' contract and when. Most immediately, this case is about whether defendants Luctor International, L.L.C. and Sazerac Distillers, LLC are entitled to a temporary restraining order and preliminary injunction. Luctor and Distillers have moved for such relief, asking the Court to freeze $513,360.10 paid to plaintiff Blue Spirits Distilling, LLC for Tommy Bahama products Blue delivered to Distillers. As grounds, Luctor and Distillers assert that the half-million dollar payment was inadvertent and unwarranted; they fear that Blue may spend the money and become unable to pay Luctor should it obtain a judgment against Blue. Motion for Temporary Restraining Order and Preliminary Injunction, DN 55 at 1 (hereafter the "Motion"). In support, they have tendered the Affidavit of Distillers' Assistant Treasurer, Sabine DeFilippo (DN 55-2). DeFilippo has averred the same "concern." *Id.* at ¶ 11. Because this concern is unsubstantiated by concrete proof, Luctor and Distillers have failed to establish irreparable harm. As a result, the Court will deny their Motion.[1]

---

[1] Because the failure to show irreparable harm disposes of the defendants' Motion, the Court will not explore the other factors pertinent to granting or denying injunctive relief. *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019) ("When one factor is dispositive, a district court need not consider the others."). For the same reason, the Court will not entertain plaintiff Blue's contention that Luctor and Distillers lack standing.

## BACKGROUND

The claims and counterclaims in this action arise from a 2021 Supply and Distribution Agreement executed by Blue and Luctor (DN 41-1). Under that contract, Blue agreed to deliver Tommy Bahama products to Luctor's designee. *Id.* at § 5.1.1. Payment was due within 60 days of delivery. *Id.* at § 5.4. For its part, Luctor agreed to provide Advertising, Marketing and Promotion services ("AMP") for Blue's Tommy Bahama products. *Id.* at § 3. Luctor also agreed to bill Blue quarterly for its services. Payment for AMP was due within 60 days following the date of Luctor's invoice(s). *Id.* at § 5.6.

In April 2022, Blue delivered $513,360.10 in Tommy Bahama product to Distillers as directed by Luctor. Distillers withheld payment, however, because it believed Blue had failed to timely pay for AMP. DeFilippo Affidavit, DN 55-2, at ¶ 3.[2] Although the timing of its invoicing is unclear, Luctor asserts that Blue was indebted to it on three invoices in the following amounts: (1) $327,250 (2) $145,000 and (3) $181,393.80. Memorandum, DN 55-1, at 2. The parties' formal claims arose when Blue sued Luctor for the $513,360.10 and Luctor counterclaimed for payment of its invoices. First Amended Complaint, DN 20; Answer & Counterclaim, DN 41. Each also asserts that the other breached the parties' contract first. *Id.* Additionally, Blue sought the same $513,360.10 from Distillers based on theories of quantum meruit and unjust enrichment. Amended Complaint, DN 20. The parties maintained this standstill until recently. On October 24, 2024, Distillers inadvertently released its hold on payment to Blue. DeFilippo Affidavit, DN 55-2 at ¶ 4. As a result, Blue was paid $513,360.10 – the amount invoiced for the April 2022 product delivery. *Id.* at ¶ 5.

---

[2] It is unclear why Distillers, a separate company, would withhold payment for product it received based on sums Blue owed to Luctor.

Now, contending that Luctor is likely to succeed on its breach-of-contract counterclaim, Luctor and Distillers ask the Court to secure that likelihood by enjoining Blue's expenditure of the $513,360.10. Motion, DN 55. They contend that Blue may become unable to pay Luctor if the Court does not freeze the funds. This "concern" is the basis for their irreparable harm showing as set out in the DeFilippo Affidavit. DN 55-2 at ¶ 11 ("Sazerac has concerns about the potential insolvency of Blue Spirits and believes there is a high likelihood that these funds could be distributed to other creditors before a judgment can be entered in this case."). Luctor and Distillers did not submit any additional evidence. On November 20, 2024, the Court held a conference on the Motion. The Motion had been fully briefed at that time. During the conference, the parties agreed to forgo submission of additional evidence and a hearing. Thus, the Motion is ripe.

## ANALYSIS

To obtain injunctive relief, Luctor and Distillers must evidence irreparable harm. *D.T. Sumner County Schools*, 942 F.3d 324, 327 (6th Cir. 2019) ("*existence* of an irreparable injury is mandatory") (emphasis in original); *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982) ("equity has traditionally required such irreparable harm before an interlocutory injunction may be issued"). Indeed, the parties agree that absent such a showing, Luctor and Distillers are not entitled to injunctive relief. Motion, DN 55-1, at 7-8; Response, DN 58, at 8. Luctor and Distillers rely on the DeFilippo Affidavit for that showing. But that Affidavit proffers only that Distillers and non-party Sazerac Company, Inc. are "concerned" that Blue may become unable to pay a judgment should Luctor obtain one in the future: "Sazerac has concerns about the potential insolvency of Blue Spirits and believes there is a high likelihood that these funds could be distributed to other creditors before a judgment can be entered in this case." DN 55-2 at ¶ 11. Of note, Luctor and Distillers' argument is similarly couched in terms of "potential"

insolvency. They assert they "will have no recourse to recover the debt against" Blue absent an injunction because "payment of the judgment has already become a ***potential*** issue." Motion, DN 55-1 at 8 (emphasis added). However, there are no records or any other testimony which support this assertion. As a result, the DeFilippo Affidavit stands alone, and it amounts to no more than conjecture.

Such conjecture does not establish irreparable harm. Simply put, preliminary injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat the plaintiff will be wronged." *City of Loas Angeles v. Lyons*, 461 US. 95, 111 (1983); *White v. Florida*, 458 U.S. 1301, 1302 (1982) (movant must establish that harm is imminent); *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (movants must show they will "suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated."); *Charlesbank Equity Fund II. v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.").

Furthermore, the cases on which Luctor and Distillers rely for the opposite conclusion do not help them. Neither case holds that the type of record before the Court – a hypothetical concern for Blue's potential, future insolvency – establishes irreparable harm. Instead, both cases involved record evidence which substantiated fraud or financial jeopardy. No such record exists here. *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) involved racketeering claims. Plaintiffs sought $8.3 million in damages from defendants who had transferred assets overseas. *Id.* at 97; 98. The district court conducted seventeen days of evidentiary hearings, *id*. at 96, and found that defendant Schierack who had no ties to the United States could "'easily dispose' of the defendants' holdings and could transfer any proceeds to foreign enterprises.'" *Id.* at 98. As

4

well, the district court "did not issue the preliminary injunction for the purpose of securing . . . a damage award under RICO." *Id*. at 96. Rather, the injunction issued based on a finding that plaintiffs were substantially likely to obtain a constructive trust. *Id.* at 97-98.

By contrast, Luctor and Distillers are asking the Court to sequester funds as security for a potential damage award, specifically to secure Luctor's counterclaim for breach of contract. Granting an injunction for this purpose would be improper. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) (district court has no authority to issue injunction to prevent asset disposal pending adjudication of contract claim for money damages); *see DeBeers Consol'd Mines, Ltd. v. United States*, 325 U.S. 212 (1945). Also, there is no evidentiary record in this case to support the conclusion that Blue has fraudulently conveyed assets or otherwise engaged in dubious conduct with respect to its assets. Rather, the record shows that as instructed by Luctor, Blue delivered Tommy Bahama products worth $513,360.10 to Distillers and now Blue has been paid that sum.

The record evidence in Luctor and Distillers' second case, *Transamerica Ins. Fin. Corp. v. North Amer. Trucking Ass'n, Inc.*, 937 F. Supp. 630 (W.D. Ky. 1996),[3] established the misappropriation of $5.4 million in loan proceeds. Transamerica agreed to make that loan for the purpose of North American's paying a lump-sum insurance premium for a master liability policy covering its nationwide business concerns. North American used loan proceeds its creditors and did not pay the premium. *Id.* at 634. The record showed that upon receipt, North American "immediately" disbursed 92% of the proceeds, $4.97 million, to its creditors. *Id.* at 636. As well, North American stated that it was "suffering severe financial difficulties and may be on the verge

---

[3] Luctor and Distillers mistakenly refer to this case as a decision of the United States Court of Appeals for the Sixth Circuit. Thus, to the extent they suggest that the *Transamerica* case is binding on this Court, that suggestion is incorrect.

of bankruptcy." *Id.* That is, North American admitted it was nearly broke and out of trust. Further, because the insurer was not paid, it cancelled the policy. *Id.* at 632. Thus, Transamerica rescinded its loan agreement with North American Trucking and sought restitution – again an equitable remedy. *Id.* at 633. It was the equitable relief sought that drove the court's decision to issue an injunction: "Because [Transamerica] seeks rescission of a contract tainted by fraud and restitution, it is entitled to preliminary relief designed to protect possible equitable remedies." *Id.* at 635. The damages were not "purely legal" in nature. *Id.* The record before this Court does not present like circumstances. There is no claim for restitution, no allegations that Blue fraudulently dissipated earmarked loan proceeds, and no substantiated threat of bankruptcy.

Luctor's counterclaim against Blue is for breach of contract. There are no allegations of fraud, and while Luctor and Distillers' fear for Blue's solvency may be sincere, there is no record evidence which substantiates their concern. Such an unsubstantiated concern does not establish irreparable harm. *Lyons*, 461 US. at 111; *White*, 458 U.S. at 1302; *Abney*, 443 F.3d at 552; *Charlesbank Equity*, 370 F.3d at 162. Consequently, by separate order, the Court will deny Luctor and Distillers' Motion for Temporary Restraining Order and Preliminary Injunction.